UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TINA SCHRUPP CRIBBS,

     Plaintiff,

v.                                      Case No:  3:15-cv-3-J-DNF

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____

## OPINION AND ORDER

Plaintiff, Tina Schrupp Cribbs, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for Supplemental Security Income ("SSI").  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed memoranda setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.**    **Social Security Act Eligibility, Standard of Review, Procedural History, Factual Background and the ALJ's Decision**

    **A. Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382a(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work, or any other

substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

## B.  Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion.  Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).  However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton v. Dep't of Health & Human Servs*., 21 F.3d 1064, 1066 (11th Cir. 1994).  The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability.  20 C.F.R. §§ 404.1520, 416.920.  At step one, the claimant must prove that she is not undertaking substantial gainful employment.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i).  If a claimant is engaging in any substantial gainful activity, she will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments.  *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii).  If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled.  20 C.F.R. § 1520(c).

At step three, the claimant must prove that her impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii).  If she meets this burden, she will be considered disabled without consideration of age, education and work experience.  *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing her past relevant work.  *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work.  20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f).  If the claimant can still perform her past relevant work, then she will not be found disabled.  *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience.  *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v).  If the claimant is capable of performing other work, she will be found not disabled. *Id*.  In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant.  *Allen v. Sullivan*, 880 F.2d

1200, 1201 (11th Cir. 1989).  There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert.  *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004).  Only after the Commissioner meets this burden does the burden shift back to the claimant to show that she is not capable of performing the "other work" as set forth by the Commissioner.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

### C.  Procedural History

Plaintiff protectively filed an application for SSI on February 15, 2011.  (Tr. 191). Plaintiff's application was denied initially on July 8, 2011, and upon reconsideration on October 4, 2011. (Tr. 120, 129).  A hearing was held before Administrative Law Judge Melinda Hart (the "ALJ") on December 21, 2011.  (Tr. 38-108).  The ALJ thereafter entered a decision finding Plaintiff not disabled. (Tr. 19-31).  The Appeals Council denied Plaintiff's request for review on November 3, 2014.  (Tr. 1).  Plaintiff initiated the instant action by filing a Complaint (Doc. 1) on January 5, 2015.  The parties having filed memoranda of law in support of their positions, this case is ripe for review.

### D.  Factual Background

Plaintiff was fifty years old on the date of the ALJ's decision.  (Tr. 41).  Her prior work experience included employment as an egg collector, DOT No. 529.687-074, light exertional level, SVP of 2, unskilled.  (Tr. 93-94).  Plaintiff is able to communicate in English and has at least a high school education.  (Tr. 29).

### E.  Summary of the ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 15, 2011, the date of her application.  (Tr. 21).  At step

two, the ALJ found that Plaintiff has the following severe impairments:  degenerative disc disease with probable gemangioma aspect at T2, bilateral carpal tunnel syndrome, hypothyroidism, chronic pain syndrome, major depression, post traumatic stress disorder (PTSD), and anxiety.  (Tr. 21).  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 25).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 416.967(b).  The claimant is able to occasionally lift and carry 20 pounds.  She is able to frequently lift and carry 10 pounds.  She is able to stand and walk for about six hours and sit for up to six hours in an eight-hour workday, with normal breaks.  She has frequent limitations for the postural maneuvers.  She is able to frequently handle objects with both hands, which is defined as gross manipulation.  She is able to engage in frequent fingering with both hands, which is defined as fine manipulation.  She must avoid concentrated exposure to the use of moving machinery and concentrated exposure to unprotected heights.  She is limited to work that requires simple, routine and repetitive tasks performed in a work environment free of fast paced production requirements involving only simple work related decisions and routine workplace changes.  She may have only occasional interaction with the public.

(Tr. 23).  At step four, the ALJ found that Plaintiff is capable of performing her past relevant work as an egg collector, as such work does not require the performance of work-related activities precluded by Plaintiff's RFC.  (Tr. 29).   Although the ALJ found that Plaintiff was not disabled at step four, the ALJ proceeded to step five and made the alternative finding that Plaintiff is capable of working as a mail clerk, office helper, and gate attendant.  (Tr. 29-30).  The ALJ concluded that Plaintiff has not been under a disability February 15, 2011, the date of Plaintiff's application.  (Tr. 31).

## II.      Analysis

Plaintiff raises three issues on appeal:  (1) whether the ALJ erred by failing to develop the record, (2) whether the ALJ erred by finding Plaintiff "not entirely credible," and (3) whether the ALJ's step 4 and step 5 findings are supported by substantial evidence.  The Court addresses each issue in detail below.

### a.   Whether the ALJ erred by failing to develop the record.

Plaintiff argues that the ALJ erred by failing to develop the record on two grounds.  First, Plaintiff contends that the ALJ failed to consider hundreds of pages of illegible, handwritten notes in her medical record which pertain to her treatment for lower back pain, neuropathy, and radiculopathy.  (Doc. 18 p. 17).  Second, Plaintiff contends that she was unable to afford treatment due to her finances.  (Doc. 18 p. 18).  Thus, Plaintiff argues, the ALJ was in the best position to re-contact her physicians for clarification of handwritten notes and to request medical source statements from treatment physicians.  (Doc. 18 p. 18).

In response, Defendant argues that Plaintiff's argument is without merit, as Plaintiff has failed to show that she was prejudiced and that her due process rights have been violated to such a degree as to that the case be remanded.  (Doc. 21 p. 5).  Defendant contends that the record contained sufficient evidence for the ALJ to decide Plaintiff's case, and the ALJ was not required to re-contact Plaintiff's physicians.  (Doc. 21 p. 6).  Finally, Defendant notes that Plaintiff was represented by counsel throughout the application process, and that it was Plaintiff's burden to present evidence to support her claim of disability.  (Doc. 21 p. 5-6).

Because a hearing before an ALJ is not an adversary proceeding, an ALJ has a duty to fully and fairly develop the record.  *Cowart v. Schweiker*, 662 F.2d 731, 735-36 (11th Cir. 1981).  This duty exists even when a claimant is represented at the hearing by counsel.  *See, e.g., Brown v.*

- 6 -

*Shalala*, 44 F.3d 931, 934 (11th Cir. 1995).  If an ALJ does not have sufficient evidence to determine whether a claimant is disabled, or if after weighing the evidence cannot reach a conclusion about whether the claimant is disabled, the ALJ may recontact a medical source.  *See* 20 C.F.R. § 416.920b(c)(1).  Although the ALJ has a duty to develop the record, "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record." *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997).

In this case, Plaintiff is correct that the record contains a multitude of illegible, handwritten notes regarding Plaintiff's treatment for lower back pain, neuropathy, and radiculopathy.  Plaintiff, however, has failed to show that the medical evidence the ALJ <u>did</u> rely on was insufficient to determine whether Plaintiff is disabled.  This failure is fatal to her claim.  While an ALJ may err under certain circumstances by failing to recontact physicians for clarification of illegible treatment notes, *See Yamin v. Comm'r of Soc. Sec.*, 2009 WL 799457 (Mar. 24, 2009), there is no requirement that an ALJ must recontact a physician every time the physician's notes are illegible.  Thus, the pertinent legal issue remains whether the record upon which the ALJ made his disability determination was so inadequate as to constitute a violation of Plaintiff's due process rights.  Here, Plaintiff has simply failed to make this showing.  Accordingly, the Court finds that the ALJ did not err by failing to develop the record as it pertains to the illegible, handwritten notes.

**b.  Whether the ALJ erred in finding Plaintiff "not entirely credible."**

Plaintiff argues that the Commissioner erred in two respects in considering Plaintiff's credibility.  First, Plaintiff argues the ALJ erred by cutting off Plaintiff's counsel's inquiry into Plaintiff's limitations regarding her ability to work with men.  Second, Plaintiff contends that

remand is warranted pursuant to sentence six of 42 U.S.C. § 405(g) because Plaintiff submitted

evidence from Dr. Steven Bailey, M.D., which supports the Plaintiff's credibility.

> **i)      Whether the ALJ erred by cutting off Plaintiff's testimony at the administrative hearing**

Plaintiff argues the ALJ erred in finding Plaintiff "not entirely credible" due to the ALJ's

refusal to permit Plaintiff's counsel to ask leading or repetitive questions.  Specifically, Plaintiff

argues that the ALJ "cut off" Plaintiff's testimony concerning the extent of her mental limitations,

including the extent to which she is capable of working around other men given her the PTSD she

suffers after being sexually molested by a male babysitter as a child.  (Doc. 18 p. 20).  Plaintiff

argues that the ALJ's decision to cut off this line of questioning prevented her from espousing the

full extent of her limitations.  (Doc. 18 p. 21).  Plaintiff argues that the ALJ's factual finding that

Plaintiff had "worked with males at substantial gainful activity levels, which shows her feelings

of intimidation are not disabling" is not supported by substantial evidence and is in direct conflict

with Plaintiff's testimony.  (Doc. 18 p. 21).  The fundamental requirement of due process is the

opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*,

424 U.S. 319, 333 (1976).  The ALJ "shall allow the parties or their designated representatives" to

ask the witnesses any questions material to the issues.  20 C.F.R. § 404.950(e).  As noted above,

however, there must be a showing of prejudice before it is found that the claimant's right to due

process has been violated to such a degree that the case must be remanded to the Secretary for

further development of the record. *Graham*, 129 F.3d at 1423.

The record reveals that the following exchange occurred during the administrative hearing:

> ALJ: Counsel, do you have any further questions?

> ATTY: Your Honor, I mean, I haven't really had an opportunity to explore this issue much more than just a very superficial level right now.

ALJ: I disagree with that assertion. You've been asking questions for a lengthy time and I think you have asked a substantial number of questions. So I disagree with that characterization.

ATTY: I -- I -- there's one follow-up question. I just you know, I'm not trying to go too far into the cause of her posttraumatic stress disorder, but I think that it's essential to touch on them brief -- to the extent that she's willing to talk about them, you know? I don't mean to dredge up traumatic experiences.

ALJ: No, I don't think we need to get into the cause. We've got the treatment records and it talks about that –

ATTY: Right.

ALJ: -- we have the notes and what she's discussing are the issues she's dealing with and the assessments of that so, no, we don't need to go into that.

ATTY: And I -- and I don't -- I don't want to ask a leading question. I'm I'm just asking –

ALJ: And we're not going back to 1986 either which is the alleged onset date in this.

ATTY: No. Right, Your Honor, of course, I'm not going back to 1986. I'm trying to get a sense of whether or not she's comfortable with working with men with -- to the extent to which she's able to work with men or with members of the opposite sex. These are issues that are touched on in her history with posttraumatic –

ALJ: All right. Just ask her.

BY THE ADMINISTRATIVE LAW JUDGE:

Q Ma'am, do you feel that you have difficulties working with men?

A Yes.

Q Okay.

Q And can –

A -- abused by a male babysitter.

Q Okay. And how long ago was this, ma'am?

A I'm trying to put it together when I was in counseling for a while.

Q Okay. Can I -- let me ask you this question. Were you abused by a male when you were a child or a teenager?

A I was young, I was not a teenager. It was –

Q So you were a child?

A Yes.

Q Okay. Now since that time, have you worked with -- actually, I think you have worked full time since that time with men. Because you mentioned you were a produce operator, is that correct?

A I was the owner of the produce.

Q Okay. So since that time, have you worked full time in positions with men?

A I had my my husband worked -- I've had -- in the produce, it was my husband, co-owner, and I was owner.

Q Okay.

A And I had females working with us.

Q Okay. So

A I had my sister-in-law and another girl working.

Q All right. Have you worked in positions where you had -- worked with men since being a child and having that unfortunate incident happen?

A It's been -- it's been years. I mean I've always been uncomfortable.

Q Okay. That's not answering my question though, ma'am. Since that unfortunate incident and it definitely is a horrible incident, since that happened as a child, have you worked in positions where you worked with men?

A I'm sure I've worked around men, yes.

Q Okay. All right.

A But

ALJ: Go ahead, counsel.

BY THE ATTORNEY:

Q And in those positions when you worked with men, how was your performance -- what was -- what was -- how did you feel when you worked with men?

ALJ: Counsel, she already she testified that she feels uncomfortable working with men.

ATTY: She felt -- okay.

ALJ: Yeah. That's

BY THE ATTORNEY:

Q So that level of discomfort, did it impact your – what was your ability to work with those men? Was it in any way restrained or –

ALJ: Counsel, she has SGA since that time so she has worked full time with men since that point. She's been uncomfortable, but she has already testified that she's been uncomfortable.

ATTY: Right. I mean I'm not -- I'm not concerting a disability back at that time, I'm trying to get those facts to reflect on her ability to work with him in the ongoing future, Your Honor.

ALJ: Counsel, she -- it was in the future from the time that she had that unfortunate incident, you know, with that man [inaudible]

ATTY: Okay. I just want to clarify your question.

BY THE ATTORNEY:

Q By saying uncomfortable, what difficulties did you have working with those men?

A What difficulties?

Q Right.

A Well, as far as men, I don't even know how to even to answer that really because –

Q I mean if there were none

A -- they're intimidating.

ALJ: Counsel, that's the last question I'm going to allow. So, ma'am, you can answer this question and then there's no more on this line of questioning. Go ahead, ma'am.

BY THE ATTORNEY:

A I get intimidated.

ALJ: Okay. All right, ma'am. All right. Okay. Counsel, are there any further questions?

ATTY: No, Your Honor. I just -- I'm sorry, I wasn't trying to fight you on that, Your Honor. I was just going to tell her that if she didn't know the difficulties, I didn't want her to make up difficulties.

ALJ: No, she did answer. She said she gets intimidated around men.

ATTY: That's all. Right. That's fine. And that's -- that's all that I had to ask about the PTSD.

ALJ: Okay. All right. Are there any further questions counsel?

ATTY: No. No, not at this time, Your Honor.

ALJ: All right. I'm going to go ahead and get vocational expert testimony.

(Tr. 87-92).

In this case, the Court finds that Plaintiff has failed to show that her due process rights were violated by the ALJ. Contrary to Plaintiff's claims, the ALJ permitted Plaintiff's counsel to inquire into the limitations Plaintiff has in regard to working with men. Plaintiff's counsel stated "that's all that I had to ask about the PTSD" and also that he had no further questions.

**ii)      Whether remand is appropriate pursuant to sentence six of 42 U.S.C. § 405(g).**

According to Plaintiff, the ALJ considered Plaintiff's failure to submit vocational rehabilitation records from 2007 as evidence undermining Plaintiff's credibility. (Doc. 18 p. 22).

Plaintiff contends that prior to the Appeals Council's decision to deny review, Plaintiff obtained and submitted the records from her vocational rehabilitation.  (Doc. 18 p. 22).  Plaintiff argues that these vocational rehabilitation notes supports a Sentence 6 remand on the issue of credibility as there is a reasonable probability that the new evidence would have influenced the outcome of the credibility determination given the ALJ's pre-occupation with the evidence of vocational rehabilitation.  (Doc. 18 p. 21).

In response, Defendant argues that the Appeals Council did consider the additional evidence submitted by Plaintiff and found that the information did not provide a basis for changing the ALJ's decision.  (Doc. 21 p. 13).  Defendant contends that this evidence was incorporated into the record and does not undermine the substantial evidence supporting the ALJ's decision.  (Doc. 21 p. 13).

Here, Plaintiff's argument that this case should be remanded pursuant to sentence six is without merit.  "The sixth sentence of § 405(g) plainly describes an entirely different kind of remand [from the fourth sentence], appropriate when the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding."  *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990).  The Eleventh Circuit's "settled precedents establish that a sentence six remand is available when evidence not presented to the Commissioner at any state of the administrative process requires further review."  *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1267 (11th Cir. 2007). As Defendant correctly notes, the additional evidence submitted by Plaintiff was received and specifically considered by the Appeals Council which found that the additional records did "not provide a basis for changing the Administrative Law Judge's decision."  (Tr. 1-7).  As this evidence

was already received and considered by the Commissioner, remand pursuant to sentence six is inappropriate.

### c. Whether the ALJ's step 4 and step 5 finding are supported by substantial evidence.

Plaintiff's third argument relates to the two previous arguments.  Plaintiff argues that the ALJ's failure to develop the record left the vocational expert with an incomplete portrait of Plaintiff's nonexertional impairments and, thus, the ALJ's findings at step 4 and step 5 were unsupported by substantial evidence.  (Doc. 18 p. 22).  Defendant responds that the ALJ properly assessed Plaintiff's RFC and properly relied on the testimony of the vocational expert to find that Plaintiff is capable of returning to her past work and that there are other jobs she can work.  (Doc. 21 p. 11-12).

In this case, as explained at length above, the ALJ did not err by failing to develop the record.  The ALJ asked the vocational expert if an individual with Plaintiff's RFC could perform her past relevant work, and the vocational expert testified the individual could perform Plaintiff's former work as an egg collector.  (Tr. 92-99).  The ALJ also asked the vocational expert if an individual with Plaintiff's RFC and other vocational characteristics could perform other work in the national economy and the vocational expert identified that such an individual could perform such jobs as a mail clerk, office helper, and gate attendant.  (Tr. 97).  The record, as discussed by the ALJ, provided substantial evidence to the support the ALJ's RFC determination and, thus, the vocational expert's testimony constituted substantial evidence.

### III.    Conclusion

The decision of the Commissioner is **AFFIRMED**.  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on March 18, 2016.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties